# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| LOUIE E. JOHNSTON JR, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 3:14-01425 |
| v. ) | Judge Trauger/Brown |
| ) | |
| LUCIEN D. GEISE, ) | |
| JOHN DOE(S) ) | |
| ) | |
| Defendants. ) | |

**To: The Honorable Aleta A. Trauger, United States District Judge**

## REPORT AND RECOMMENDATION

Before the court are Mr. Louie E. Johnston, Jr.'s (Plaintiff's) two motions for a temporary restraining order (TRO) filed July 3, 2014 and August 27, 2014 (Docs. 2; 31). Also before the court is Mr. Lucien D. Geise's (Defendant's) motion to dismiss for failure to state a claim and for lack of jurisdiction with a supporting attachment filed August 5, 2014 (Docs. 20; 21). For the reasons explained below, the Magistrate Judge **RECOMMENDS** that Defendant's motion to dismiss be **GRANTED** and all federal claims be dismissed for lack of standing. The Magistrate Judge further **RECOMMENDS** that the court not retain jurisdiction over state claims and all state claims be **DISMISSED** without prejudice. The Magistrate Judge **RECOMMENDS** that Plaintiff's motions for TROs be **TERMINATED** as moot.

### I. BACKGROUND

Plaintiff, proceeding *pro se*, is a Tennessee resident and author of a Tennessee state legislative bill, Senate Bill 2450/House Bill 2440 (the bill). The bill, if enacted, would codify grievances regarding elements of the federal Patient Protection and Affordable Care Act (PPACA) for the purpose of state interposition (Docs. 1, pp. 7-8; 1-1, pp. 4-12). Plaintiff defines

interposition as an "honorable process of codifying grievances with supporting legal positions" that the state can commence instead of filing a federal lawsuit (Doc. 1, p. 8). Under such interposition, the state would defend the status quo (and not implement any offending federal statute) until all the grievances are resolved through negotiations or a judicial ruling on the merits of the grievances (Doc. 1, p. 8). In this case, the bill would also make it a crime to interfere with the state's interposition of the PPACA, presumably by implementing or enforcing the PPACA in Tennessee, until the specified grievances are addressed or resolved (Doc. 1, p. 8).

Defendant is the Executive Director of the fiscal review committee for the Tennessee General Assembly and is responsible for certifying fiscal notes on all general bills (Doc. 20, p. 1). TENN. CODE ANN. § 3-2-107 requires that a fiscal note be attached to all general bills brought before the General Assembly that "shall, if possible, include an estimate in dollars of the anticipated change in revenue, expenditures, or fiscal liability under the provisions of the bill or resolution." The fiscal review committee obtained potential fiscal impact information on the bill from numerous executive departments (Doc. 20, p. 3). Defendant certified a fiscal note that included an estimate of penalties exceeding $32 billion should the federal government find Tennessee noncompliant with federal law based on the process of interposition under the bill (Doc. 1-1, pp. 14-18). Plaintiff, however, disagreed with this estimate, believing that no penalties would be possible or likely given U.S. Supreme Court rulings and the Tennessee Health Freedom Act of 2011 (Doc. 1, p. 21). Plaintiff advised Defendant of the perceived errors in the fiscal note, but Defendant did not correct the original fiscal note (Docs. 1, pp. 9-10; 20, p. 1). Plaintiff claims that the bill failed in the Senate's Commerce and Labor Committee due to the "fraudulent" fiscal note (Doc. 1, p. 3).

2

Plaintiff sues for compensatory and punitive damages (Doc. 1, p. 13) under various federal constitutional provisions (Article IV, Sec. 4; and the First, Ninth, Tenth and Fourteenth Amendments) and federal statutes (18 U.S.C. §§ 1018, 1343; 28 U.S.C. §§ 1343, 4101; 42 U.S.C. §§ 1983, 1985-86; 47 U.S.C. § 230), as well as under Tennessee constitutional provisions and statutes, alleging civil rights violations, fraud, and defamation (Doc. 1, pp. 6, 17-44, 54-57). Plaintiff also seeks immediate injunctive relief to prevent Defendant from certifying fiscal notes based on conjecture (Doc. 1, pp. 6, 54). The District Judge referred this case to the Magistrate Judge by the Order dated July 15, 2014 (Doc. 7). Defendant moves to dismiss the complaint for lack of subject-matter jurisdiction and failure to state a claim (Doc. 20, p. 2). Therefore, the matter is properly before the court.

## II. LEGAL STANDARD

If a party lacks constitutional standing, then the court should dismiss the claim for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). *See Loren v. Blue Cross & Blue Shield of Mich.,* 505 F.3d 598, 607 (6th Cir. 2007) (citation omitted) ("If Plaintiffs cannot establish constitutional standing, their claims must be dismissed for lack of subject matter jurisdiction.").

## III. ANALYSIS

### A. There is No Subject-Matter Jurisdiction Because Plaintiff Does Not Meet the Minimum Constitutional Requirements of Standing.

The power of federal courts to hear and decide cases is defined by Article III of the U.S. Constitution and by federal statutes pursuant to Article III. Importantly, the doctrine of Article III standing requires that (1) "the plaintiff must have suffered an 'injury in fact' "; (2) "there must be a causal connection between the injury and . . . the challenged action of the defendant"; and

(3) "it must be 'likely' . . . , that the injury will be 'redressed by a favorable decision.' " *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (citation omitted). Plaintiff bears the burden of proving that he has standing. *See Lujan*, 504 U.S. at 561. While, at this stage, "general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.' " *Lujan*, 504 U.S. at 561 (citation omitted).

Overall, Plaintiff's injuries are insufficient to establish standing. Most of the injuries that Plaintiff alleges are insufficient to satisfy even the existence of an injury-in-fact. For example, Plaintiff argues that he has been denied due process of law because the bill, which would achieve due process in Tennessee, was not passed due to Defendant's "fraudulent" fiscal note (Doc. 1, pp. 9; 18; 21). Putting aside issues of causation and redressability, this injury is a generalized injury, shared by all the citizens of Tennessee, and is insufficient to establish the injury-in-fact element of standing. *See Lujan*, 504 U.S. at 573-74 ("[A] plaintiff raising only a generally available grievance about government . . . , and seeking relief that no more directly and tangibly benefits him than it does the public at large—does not state an Article III case or controversy."). In fact, Plaintiff admits that these injuries are shared by all citizens when he complains that the Defendant's "fraudulent" fiscal notes are "killing legislation, depriving Plaintiff, Legislators, and citizens of the honest services of Legislators." (Doc. 1, p. 3). This shortcoming also applies to Plaintiff's generalized injury stemming from the sheer "fraudulent" nature of Defendant's fiscal note. Finally, this shortcoming applies to any injury stemming from future "fraudulent" fiscal notes.

Similarly, Plaintiff argues that the "fraudulent" fiscal note will further injure him as he is in the process of proposing similar legislation in twenty-eight state legislatures, and he believes

4

that Tennessee's failure to pass the bill will result in other states doing the same (Doc. 1, p. 11). Again, putting aside issues of causation and redressability,[1] this potential future injury is insufficient to satisfy the requirements of standing because it is simply too attenuated and speculative.

In addition, Plaintiff argues that he has lost considerable personal investments through hundreds of hours in time and effort spent educating Tennessee legislators on the bill (Doc. 1, p. 12). Although this injury is specific to Plaintiff, it is again not sufficient to satisfy the requirements of standing. The passage of a bill is not a legally protected interest. People invest in supporting proposed bills every day, and the mere fact that the bill fails to pass does not grant these individuals standing.[2]

In the end, there are only two injuries cited by Plaintiff that warrant further discussion. Plaintiff argues that Defendant's fraudulent fiscal note caused Plaintiff to suffer: (1) reputational damage and (2) loss of donations and other support (Doc. 1, pp. 11-12). Plaintiff has not specified any broadcast cancellations nor has he pointed to specific decreases in donation support, but, for the purposes of this Report and Recommendation (R&R), the Magistrate Judge assumes that Plaintiff's statements regarding these injuries are true at this stage.[3]

However, even if the court recognizes these particularized injuries and assumes that Plaintiff can allege sufficient facts to demonstrate them, Plaintiff still fails to establish causation

---

1 In particular, Plaintiff has not explained why other states would put so much stock into a fiscal note that was, according to Plaintiff, "openly called 'ridiculous' " by Tennessee Senators (Doc. 1, p. 15). To the extent that other states have fiscal note requirements, these states would be free to make their own estimates of fiscal impact.

2 As before, this injury suffers from problems of causation and redressability. Without the fiscal note, the bill might still fail, and Plaintiff's injury (wasted efforts and investments) would not be relieved.

3 It is difficult to imagine, however, that the fiscal note caused any damage to Plaintiff's reputation as the Plaintiff was not mentioned by name in the fiscal note; Plaintiff simply disagreed with the fiscal note. The fiscal note, even if erroneous, was not a personal attack on Plaintiff, the author of the bill.

and redressability. For one, Plaintiff does not show that the harm to his reputation and the decreases in support were caused by the "fraudulent" aspects of Defendant's fiscal note.

Finally, even if we assume that it was Defendant's "fraudulent" fiscal note that caused donors and other supporters to view the bill as unlikely to pass, then Plaintiff would still have to show how a favorable decision from this court would redress his injuries. Even without a "fraudulent" fiscal note, Plaintiff's bill might still fail, as the bill's passage is dependent on the actions of third parties, such as the committee members who decide whether to move the bill forward and ultimately the state legislators who vote on the bill. In essence, the redressability of Plaintiff's injuries "hinge[s] on the response . . . of others" and the existence of this element of standing will depend on "the unfettered choices made by independent actors not before the courts and whose exercise of broad and legitimate discretion the courts cannot presume either to control or to predict . . . ." *Lujan*, 504 U.S. at 562 (internal citations omitted). Hence, "it becomes the burden of the plaintiff to adduce facts showing that those choices have been or will be made in such manner as to produce causation and permit redressability of injury." *Lujan*, 504 U.S. at 562. Simply put, Plaintiff has not met this difficult burden.

Because Plaintiff does not meet the constitutional minimum requirements of standing, his entire claim must be dismissed for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1).

### B. Other Grounds for Dismissal

Defendant cites additional grounds on which the claim should be dismissed. Because the Magistrate Judge finds that the entire claim must be dismissed for lack of subject-matter jurisdiction, this R&R does not discuss these additional grounds in detail. Instead, this R&R makes a few observations below.

1. *Failure to State a Claim.* To the extent that any statutes appear to confer standing, the Court still cannot ignore the constitutional minimum requirements of standing. Nonetheless, a review of the federal statutes Plaintiff is suing under also suggests that Plaintiff has not met statutory standing. Hence, Plaintiff's statutory claims could also be dismissed for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *See Anarion Investments, LLC v. Carrington Mortgage Servs.,* No. 3:14-CV-00012, 2014 WL 3556026, at *7 (M.D. Tenn. July 17, 2014).

2. *Eleventh Amendment's Doctrine of Sovereign Immunity.* Plaintiff does not make it clear whether he is suing Defendant in his official or individual capacity. To the extent that Plaintiff is suing Defendant in his official capacity for money damages or equitable relief, those suits are barred.[4] *See Hans v. Louisiana,* 134 U.S. 1, 10 (1890); *State of Louisiana ex rel. Elliott v. Jumel*, 107 U.S. 711 (1883). The U.S. Supreme Court has ruled, however, that federal courts may enjoin state officials from violating federal law in certain cases. *See Fitzpatrick v. Bitzer*, 427 U.S. 445 (1976). It does not appear to be the case that Congress wished to abrogate state sovereign immunity in these circumstances through the statutes that Plaintiff cites.

3. *Plaintiff's State Law Claims*. Plaintiff also alleges various state constitutional and statutory claims. Because the Magistrate Judge recommends dismissal of all federal claims, the state law claims should be dismissed because they alone cannot sustain an action in federal court. To the extent relevant, the Magistrate Judge would also not recommend that the court exercise supplemental jurisdiction over any remaining state

---

4 Moreover, to the extent that Plaintiff is suing Defendant in his individual capacity, it is likely that Defendant's actions are also protected under the doctrine of legislative immunity because the fiscal note is arguably part of the legislative process.

7

law claims.[5] The issues would involve the application of Tennessee law, and, given the early stage of this case, it would not be in the interest of judicial economy for the court to adjudicate these claims. *See Anarion Investments, LLC*, 2014 WL 3556026, at *8. Hence, these claims should be dismissed without prejudice.

4. *Plaintiff's Requested Injunctive Relief*. It is likely that Plaintiff's requested injunctive relief, preventing Defendant in his official capacity from certifying "fraudulent" or otherwise conjectural fiscal notes, would be barred under the doctrine of sovereign immunity. Plaintiff's argument for why injunctive relief is necessary rests on interpreting the fiscal note requirements under TENN. CODE ANN. § 3-2-107 (Docs. 2, pp. 2-3; 31, pp. 2-3). However, states and state officials may not be sued in federal court for violations of state law committed in their official capacity regardless of the relief sought. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106, 121 (1984). In addition, even if the Plaintiff could construe the requested injunctive relief as an ongoing violation of federal law to support prospective relief, Plaintiff would lack standing. As the U.S. Supreme Court confirmed in *Lujan v. Defenders of Wildlife*, "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *See Lujan*, 504 U.S. at 564 (internal citations omitted). Even if Plaintiff could establish an injury from this "fraudulent" fiscal note, Plaintiff would still not necessarily establish an injury-in-fact relating to any future fiscal notes that would support his request for injunctive relief.

---

5 Generally, "[w]hen all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims, or remanding them to state court if the action was removed." *Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1254–55 (6th Cir. 1996).

## IV. RECOMMENDATION

For the reasons explained above, the Magistrate Judge **RECOMMENDS** that Defendant's motion to dismiss be **GRANTED** and all federal claims be dismissed for lack of standing. The Magistrate Judge further **RECOMMENDS** that the court not retain jurisdiction over state claims and all state claims be **DISMISSED** without prejudice. The Magistrate Judge **RECOMMENDS** that Plaintiff's motions for TROs be **TERMINATED** as moot.

Under Rule 72(b), Fed. R. Civ. P., the parties have fourteen (14) days from service of this R&R within which to file with the District Court any written objections to the proposed findings and recommendations made herein. Any party opposing shall have fourteen (14) days from receipt of any objections filed regarding this R&R within which to file a response to said objections. Failure to file specific objections within fourteen (14) days of receipt of this R&R may constitute a waiver of further appeal of this R&R. *Thomas v. Arn*, 474 U.S. 140, *reh'g denied*, 474 U.S. 1111 (1986).

**ENTERED** this 16th day of December, 2014.

/s/ Joe B. Brown_____
Joe B. Brown
United States Magistrate Judge