# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| LOUIE E. JOHNSTON, JR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil No. 3:14-CV-01425 |
| ) | Judge Aleta A. Trauger |
| LUCIEN C. GEISE, Executive Director, ) | |
| Tennessee General Assembly's Fiscal ) | |
| Review Commission, and JOHN DOE(S), ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

On December 16, 2014, the Magistrate Judge issued a Report and Recommendation ("R&R") (Docket No. 39), which recommends that (1) the Motion to Dismiss (Docket No. 20) filed by Defendant Lucien C. Geise ("Geise") be granted, and (2) the two pending Motions for Temporary Restraining Order filed by *pro se* Plaintiff Louie E. Johnston, Jr. ("Johnston") be terminated as moot. Johnston has filed Objections (Docket No. 40), to which Geise has filed a Response in opposition. (Docket No. 41). For the following reasons, the court will overrule the Objections, accept and adopt the R&R, grant the Motion to Dismiss, and terminate the Motions for Temporary Restraining Order as moot.

When a magistrate judge issues a report and recommendation regarding a dispositive pretrial matter, the district court must review *de novo* any portion of the report and recommendation to which a specific objection is made. Fed. R. Civ. P. 72(b); 28 U.S.C. § 636(b)(1)(C); *United States v. Curtis*, 237 F.3d 598, 603 (6th Cir. 2001); *Massey v. City of Ferndale*, 7 F.3d 506, 510 (6th Cir. 1993). Objections must be specific; an objection to the

1

report in general is not sufficient and will result in waiver of further review. *See Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995).[1]

## FACTS AND PROCEDURAL BACKGROUND

Johnston is a Tennessee resident. He describes himself as a "Constitutionalist Author/Historian who invested substantial personal time and resources since 2010 working with hundreds of [s]tate [l]egislators in 28 [s]tates to author [l]egslation involving [d]ual [s]overeignty issues." (Docket No. 1 at p. 1.) Johnston claims to have a "Constitutionalist expert reputation with [l]egislators." (*Id*.) Johnston has published books entitled "THE Christian Nation Revolution, Regeneration" and "States are Sovereign . . . sometimes they have to act like it" that together include a number of proposed state laws based upon theories of state resistance to federal authority. (*Id*. at pp. 1, 11-12.) Johnston claims to have spoken to "citizens groups in multiple states," to have appeared on "radio broadcasts nationally," and to have appeared on "television programs broadcast on multiple networks, including Fox," to speak about "God and [c]ountry, Constitutionalist content." (*Id*.) Johnston is not in any way a member of, or employed by, any branch of the Tennessee state government. (*Id*., *passim*.)

Geise is the Executive Director of the Fiscal Review Committee ("FRC") of the Tennessee General Assembly.[2] The FRC is responsible for certifying "fiscal notes" on all general bills in Tennessee. A fiscal note is a budgeting tool that estimates, in dollars where

---

[1] Objections are not waived if the magistrate judge fails to warn the party of the potential waiver. *See Mattox v. City of Forest Park*, 183 F.3d 515, 519-20 (6th Cir. 1999). Here, the Magistrate Judge expressly warned Johnston of the need to timely file specific objections. (Docket No. 39 at p. 9.)

[2] The FRC is comprised of numerous senators and representatives, each of whom are voting members. Tenn. Code Ann. § 3-7-101. Pursuant to Tenn. Code Ann. § 3-7-107(a), the FRC is empowered to hire an Executive Director.

possible, the anticipated change in revenue, expenditures, or fiscal liability under the provisions of a proposed bill. Tenn. Code Ann. § 3-2-107. Stated differently, a fiscal note sets forth an estimate of the impact of a proposed bill on the state budget. After a fiscal note is prepared by FRC staff via consultation with various executive departments, Geise approves and certifies the accuracy of the information contained therein and publishes the fiscal note to bill sponsors and general public. (Docket No. 1 at p. 2.)

Johnston authored a piece of legislation intended to "codify[] [s]tate grievances regarding 10 specific unconstitutional elements of the [Patient Protection and Affordable Care Act], aka Obamacare, perceived harmful to [s]tate citizens." (Docket No. 1 at p. 8.) The legislation achieved its goals by means of "state interposition," which is described by Johnston as "an honorable legal resistance to perceived [f]ederal tyranny" and "not yielding to Federal encroachment or tyranny." (*Id*.) Under the theory of interposition, a state "interposes" itself between the federal government and the people of that state by taking action to prevent the implementation of a federal law that the state considers unconstitutional and also criminalizes attempts to interfere with the state's interposition efforts.[3] (*Id*. at p. 8.) Johnston's legislation was intended to prevent implementation of the Patient Protection and Affordable Care Act ("ACA") in Tennessee by using state interposition to declare the ACA unconstitutional and to

---

[3] The practical result of such a course of action is that, instead of complying with a federal law and suing the federal government over the law's constitutionality, the state refuses to comply with the federal law and requires the federal government to sue the state to force it to do so. The Supreme Court has held that state interposition is "not a constitutional doctrine," but rather "illegal defiance of constitutional authority." *United States v. State of La.*, 364 U.S. 500, 501 (1960) (citing *Bush v. Orleans Parish Sch. Bd.*, 188 F. Supp. 916, 926 (D.C. La. 1960)). However, an examination of the constitutionality of Johnston's proposed legislation is not necessary for the resolution of the issues before the court.

mandate state penalties for anyone who interfered with Tennessee's refusal to comply with the ACA. (*Id.*)

Johnston's proposed legislation was introduced in the Tennessee Senate by State Senator Jim Summerville (SB2450) and in the Tennessee House by Representative Susan Lynn (HB2440). (*Id.* at p. 7.) The bills did not refer to Johnston. (*See* Docket No. 1, Exs. 1, 2, 22, 23.)[4] The Senate version of the bill was referred to the Senate Commerce and Labor Committee ("CLC"). (*Id.*) The FRC prepared a fiscal note ("Fiscal Note") for the interposition bill by consulting with, *inter alia*, the Tennessee Department of Health, TennCare, and the Tennessee Benefits Administration (Finance and Commerce). (*Id.* at p. 9 and Exs. 11-18.) The Fiscal Note explained that the conclusions contained therein were premised upon a number of unknown factors, potential implications and possible occurrences, and, therefore, the Fiscal Note stated that the "exact fiscal impact [of the interposition bill] cannot be determined."[5] (Docket No 20, Ex. 1) The Fiscal Note nevertheless sets forth an estimate of (1) federal funds which could be jeopardized, (2) potential federal penalties, (3) potential reimbursements that may be owed by Tennessee, (4) potential lost cost savings to Tennessee, and (5) potential impacts to commerce in Tennessee, which together exceeded thirty-two billion dollars. (*Id.*; Docket No. 1 at 14-18.) As such, the FRC's thirty-two billion dollar estimate represented an amount that might be reached if

---

[4] Exhibits attached to the Complaint are considered part of the pleadings and do not convert a motion to dismiss into one for summary judgment. Fed. R. Civ. P. 10(c); *Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 335 (6th Cir. 2007.)

[5] Attachment of the Fiscal Note to the Motion to Dismiss does not convert the motion into one for summary judgment, because the Fiscal Note is referred to in the Complaint and is an integral part of the factual allegations contained therein. *Weiner v. Klais and Co., Inc.*, 108 F.3d 86, 89 (6th Cir. 1997). Johnston did not attach a copy of the Fiscal Note to the Complaint. (Docket No. 1.)

the federal government were to find Tennessee to be noncompliant with the ACA based on state interposition, and Tennessee were to suffer all potential negative economic events as a result. (*Id*.) Geise certified the accuracy of the Fiscal Note. (*Id*. at p. 8.)

Johnston disagreed with the estimate contained in the Fiscal Note. Johnston believed that state interposition by Tennessee was "honorable" and "legal" and that Geise was ignoring "[s]tate [i]nterposition to resolve specific perceived illegal acts of the [f]ederal [g]overnment as a basic Constitutional right." (*Id*. at p. 21.) Johnston further believed that no financial penalties or losses were likely, given various Tennessee laws and court rulings. (*Id*.) In short, Johnston believed Geise (1) "[knew] better," (2) had "crossed the line personally," (3) had submitted a "fraudulent" Fiscal Note to deprive Tennessee of "the Republican form of government guaranteed by the U.S. Constitution in Article IV, Section 4," and (4) was "approv[ing] the [f]ederal invasion" of Tennessee. (*Id*. at pp. 9-10, 21.) Johnston advised Geise and the members of the CLC of the perceived errors in the Fiscal Note, but Geise did not correct it. (*Id*. at pp. 3, 5, 9-10, 18, 21-22.) Johnston and Geise both testified before the CLC. (Id. at pp. 9-10, 15.) Certain Senators called the Fiscal Note "ridiculous." (*Id*. at p. 15.) Johnston's bill failed in the CLC. (*Id*. at p. 3.)

On July 3, 2014, Johnston filed his Complaint in this court, seeking compensatory and punitive damages under various federal constitutional provisions (Article IV, Sec. 4; and the First, Ninth, Tenth and Fourteenth Amendments) and federal statutes (18 U.S.C. §§ 1018, 1343; 28 U.S.C. §§ 1343, 4101; 42 U.S.C. §§ 1983, 1985-86; 47 U.S.C. § 230), as well as under Tennessee constitutional provisions and statutes, alleging civil rights violations, fraud, and defamation. (*Id*. at pp. 6, 13, 17-44, 54-57.) Johnston also seeks immediate injunctive relief to prevent Geise from certifying fiscal notes based on "possibilities or contingencies." (*Id*. at p. 54.) The court referred this case to the Magistrate Judge on July 15, 2014. (Docket No. 7.) On

5

August 5, 2014, Geise filed the Motion to Dismiss. (Docket No. 20.) On August 27, 2014, Johnston filed a Response. (Docket No. 30.) The Magistrate Judge issued the R&R on December 16, 2014. (Docket No. 39.) On December 30, 2014, Johnston filed Objections. (Docket No. 40.) On January 5, 2015, Geise filed a Response, incorporating all arguments contained in the Motion to Dismiss. (Docket No. 41.)

In addition, Johnston has filed two Motions for Temporary Restraining Order in this action. The first was contemporaneously filed with the Complaint on July 3, 2014. (Docket No. 2.) In it, Johnston sought (1) the same injunctive relief requested in the Complaint concerning certification of future fiscal notes based on "possibilities or contingencies," and (2) removal of any such information from the Fiscal Note. (*Id.*) The second, filed on August 27, 2014, is duplicative of the first. (Docket No. 31.)

## **LEGAL STANDARD**

"Rule 12(b)(1) motions to dismiss . . . generally come in two varieties: a facial attack or a factual attack." *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007). When a Rule 12(b)(1) motion contests subject matter jurisdiction factually, such as questioning whether a party has standing to sue, the court must "weigh the evidence" in order to determine whether it has power to hear the case. *DLX, Inc. v. Kentucky*, 381 F.3d 511, 516 (6th Cir. 2004); *IPXpharma, LLC v. Millennium Pharm., Inc.*, No. 3:14-cv-1545, 2014 WL 6977662, at *4 (M.D. Tenn. Dec. 9, 2014). When the facts are disputed, "[t]he district court has broad discretion to consider affidavits, documents outside the complaint, and to even conduct a limited evidentiary hearing if necessary." *Cooley v. United States*, 791 F.Supp. 1294, 1298 (E.D. Tenn. 1992), *aff'd sub nom.*, *Myers v. United States*, 17 F.3d 890 (6th Cir. 1994). The court can do so without converting the motion into a motion for summary judgment. *Id.* When this occurs, no

6

presumptive truth applies to a plaintiff's factual allegations, and the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). In the end, the party asserting jurisdiction always bears the burden of establishing jurisdiction. *Sun Entm't Corp. v. Music World Music, LLC*, No. 3:11-00625, 2012 WL 2812681, at *1 (M.D. Tenn. July 10, 2012).

## MOTION TO DISMISS

### I. The Motion to Dismiss and the R&R

Geise makes several arguments in support of the Motion to Dismiss. First, Geise contends that the Eleventh Amendment and the doctrine of sovereign immunity bar Johnston's claims against Geise in his official capacity as a state government official. (Docket No. 21 at pp. 6-7.) Second, Geise argues that Johnston's federal claims against Geise in his individual capacity must be dismissed because there is no case or controversy to be adjudicated. (*Id*. at pp. 5-6, 11-12.) More specifically, Geise contends that Johnston has no standing to bring his individual claims – for money damages or injunctive relief – because Johnston fails to allege either any (1) action taken against him or (2) personal injury or damage. (*Id*.) Furthermore, Geise argues that Johnston fails to state any substantive claim under federal or state statutes or state common law theories of liability. (*Id*. at pp. 7-10.)

Johnston's Response to the Motion to Dismiss begins with a lengthy discussion of the concept of state interposition and its proposed application in Tennessee. (Docket No. 30 at pp. 1-5.) Johnston repeatedly accuses Geise of "fraudulent" activities in connection with the Fiscal Note, and he suggests that the core issues at the motion to dismiss stage are Geise's "incontrovertible" malicious acts. (*Id*. at pp. 6-10.) Johnston's Response is at times

incomprehensible, and he repeatedly claims to have conclusively "proved" his case. (*Id*. at pp. 1-9.) Johnston fails to address any of the primary legal arguments made in support of the Motion to Dismiss. (*Id*.)

In the R&R, the Magistrate Judge found that, to the extent plaintiff brings claims against Geise in his official capacity, such suits are barred by the Eleventh Amendment and the doctrine of sovereign immunity. (Docket No. 39 at p. 7.) Regarding claims against Geise in his individual capacity, the Magistrate Judge found that there is no subject matter jurisdiction because Johnston does not meet the minimum constitutional requirements of standing.[6] (*Id*. at pp. 3-5.) The Magistrate Judge concluded that most of the injuries alleged by Johnston are insufficient to satisfy the existence of an injury-in-fact, primarily because Johnston only alleges a generalized grievance about government that is shared by other citizens of Tennessee. (*Id*. at p. 4.) The Magistrate Judge further found that the allegation that the Fiscal Note will injure Johnston's efforts to get interposition bills passed in other states is too attenuated and speculative to establish standing. (*Id*. at pp. 4-5.) The Magistrate Judge also concluded that the loss of personal investments of time and effort spent educating Tennessee legislators as to interposition is an insufficient injury, because the passage of a bill is not a legally protected interest. (*Id*. at p. 5.)

The Magistrate Judge discussed two other alleged injuries – reputational damage and loss of donations and other support – and concluded that, even if these qualified as injuries-in-fact,

---

[6] The Magistrate Judge also suggested that, while the Complaint fails to meet the constitutional minimum requirements of standing, it also fails to meet any standing conferred by statute. (Docket No. 39 at p. 7.) The court does not disagree. However, because constitutional standing is outcome determinative here, the court need not discuss statutory standing further.

8

Johnston fails to allege facts sufficient to establish the causation and redressability aspects of standing. (*Id*. at p. 6.) The Magistrate Judge found this to be true because (1) the Complaint does not allege that the harm to Johnston's reputation or decreases in support were caused by the purportedly "fraudulent" aspects of the Fiscal Note, and (2) even if causation were assumed, Johnston cannot show how a favorable decision from the court would redress his injury because the interposition bill's passage would depend upon the actions of other parties. (*Id*.) Finally, the Magistrate Judge found that, even if Johnston had a redressable past injury, Johnston's request for injunctive relief could not survive either (1) sovereign immunity or (2) a lack of standing resulting from an absence of injury-in-fact concerning future fiscal notes.[7] (*Id*. at p. 8.)

Accordingly, the Magistrate Judge recommended that (1) the Motion to Dismiss be granted under Rule 12(b)(1), (2) all federal claims be dismissed for lack of standing, (3) jurisdiction over Johnston's remaining state law claims be declined, and (4) the Motions for Temporary Restraining Order be terminated as moot. (*Id*. at p. 9.)

## II. The Objections

The Objections are far from a model of clarity. Because the plaintiff is proceeding *pro se*, the court liberally construes the Objections as follows.[8]

Johnston generally objects to the Magistrate Judge's conclusions concerning standing. (Docket No. 40 at pp. 1-3.) Johnston argues that he had demonstrated injury-in-fact because he

---

[7] The Magistrate Judge noted that, when all federal claims have been dismissed before trial, the balance of considerations usually points to dismissing or remanding remaining state law claims.

[8] As a threshold matter, the Objections clarify that Johnston is pursuing this action solely against Geise in his individual capacity. (Docket No. 40 at pp. 4-5.) For this reason, the court need not discuss claims against Geise in his official capacity, or the fact that such claims would be barred by the Eleventh Amendment, any further.

has been "denied due process to present his [b]ill for fair consideration by the state legislature, to fully vet the [b]ill in due process, to obtain debate, harness the intellectual capital of all Tennessee [s]tate [l]egislators, to produce the strongest [b]ill fully vetted to the [s]tate [l]egislators in both [h]ouses for their votes of approval or disapproval accordingly." (*Id*. at pp. 1-2.) Johnston contends that this injury-in-fact is "in no way diminished by the collateral injury to all citizens of Tennessee." (*Id*. at p. 2.) In addition, Johnston argues that both (1) "loss of book sales" and "speaking engagement credibility," and (2) lost value of "considerable personal investments" in advocating for the interposition bill, are sufficient injuries to confer standing. (*Id*.)

Johnston also objects to the findings of the Magistrate Judge as to lack of causation and redressability. (*Id*.) Johnston contends that his alleged injuries are "caused solely by the denial of due process and violation of Constitution and [c]ivil [r]ights due solely to the [f]raudulent Fiscal Note caused solely by [Geise] personally." (*Id*.) As to redressability, Johnston makes contradictory arguments. On the one hand, Johnston argues that his claims "do not hinge whatsoever on passage of a Bill." (*Id*.) On the other hand, Johnston contends that, upon his victory in this lawsuit, Tennessee legislators will "beyond any reasonable doubt" pass the interposition bill, thereby "permit[ting] redressability of injury." (*Id*. at 4.)

Johnston also takes issue with the Magistrate Judge's observation that it is difficult to find any reputational injury to Johnston. Johnston contends that the Magistrate Judge "ignored totally the numerous, incontrovertible, unchallenged, [sic] documentation specifically in Plaintiff Exhibits PROVING [Geise's] [f]raudulent Fiscal Note in writing to [Geise] and openly copied to every member of the [CLC], who openly agreed on video that the Fiscal Notes had no other

10

purpose than to kill the [b]ill, denying Plaintiff due process as stated previously herein ab initio, ad infinitum."[9] (*Id*. at p. 10.)

In Response to the Objections, Geise directs the court to his prior arguments in support of the Motion to Dismiss and in opposition to the Motions for Temporary Restraining Order. (*See* Docket No. 41.)

### III. Analysis

Based upon the Objections, the court has independently considered the pending Motion to Dismiss and evaluated whether the allegations of the Complaint are sufficient to establish standing.

Article III of the Constitution gives the federal courts jurisdiction only over "cases and controversies," of which the component of standing is an "essential and unchanging part." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). A party seeking to invoke the court's jurisdiction must establish the necessary standing to sue before the court may consider the merits

---

[9] The court notes that the Objections contain several pages of accusations concerning the Magistrate Judge. First, Johnston complains that the Magistrate Judge held a "trial" instead of a "scheduling conference" when he discussed the merits of the case with the parties. (Docket No. 40 at p. 8.) This claim is without merit. It is normal for a judge to review the facts and legal claims of the parties, and to provide feedback thereon, during pre-trial conferences. Second, Johnston faults the Magistrate Judge for not having reviewed all of Johnston's evidence before a pretrial conference but promising to do so before issuing any rulings in this case. (*Id*.) This complaint is also without merit. It is normal for judges to review evidence in the interim period between a pretrial conference and issuance of a ruling on the merits of a motion or filing of a report and recommendation. The Magistrate Judge is not obligated to operate on Johnston's desired schedule. Finally, Johnston claims that the Magistrate Judge refused to "simply read and accept the well documented, incontrovertible facts" offered in support of the Complaint. (*Id*.) However, Johnston has no evidence to support the claim that the Magistrate Judge refused to consider any facts or legal argument (in the Complaint or otherwise). To the contrary, the R&R filed by the Magistrate Judge reflects appropriate consideration of (1) the Complaint and its exhibits and (2) the parties' legal arguments. In sum, Johnston's extensive attacks on the Magistrate Judge are unwarranted and, therefore, have not impacted this court's decisions.

of that party's cause of action. *Whitmore v. Arkansas*, 495 U.S. 149, 154 (1990). A plaintiff is required to show standing to sue at each stage in the litigation. *Lujan*, 504 U.S. at 561–62. The standing inquiry invokes both constitutional and prudential limitations on federal court jurisdiction. *Id.* at 573-74; *Warth v. Seldin*, 422 U.S. 490, 498 (1975). To establish standing under the Constitution, a plaintiff must show that: (1) he has suffered an "injury in fact" that is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by the relief requested. *Gaylor v. Hamilton Crossing CMBS*, 582 F. App'x 576, 2014 WL 4357498, at *3 (6th Cir. Sept. 4, 2014) (citing *Lujan*, 504 U.S. at 560-61; *Klein v. U.S. Dep't of Energy*, 753 F.3d 576, 579 (6th Cir. 2014)); *see also Friends of the Earth, Inc. v. Laidlaw Envt'l Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000). These mandatory minimum constitutional requirements – commonly known as (1) injury-in-fact, (2) causation, and (3) redressability – apply in every case.

The Supreme Court has also held that, based upon co-extensive prudential standing principles, an alleged injury that is "a generalized grievance shared in substantially equal measure by all or a large class of citizens" does not constitute a specific injury-in-fact that warrants the exercise of a federal court's subject matter jurisdiction. *Warth*, 422 U.S. at 499. Thus, "a plaintiff raising only a generally available grievance about government . . . and seeking relief that no more directly and tangibly benefits him than it does the public at large . . . does not state [an injury-in-fact sufficient to establish] an Article III case or controversy." *Lujan*, 504 U.S. at 573-74*; see also id.* (collecting numerous cases dismissed by the Supreme Court based on the insufficiency of citizen or taxpayer standing to confer jurisdiction over lawsuits generally

alleging improper or unconstitutional governance and noting that "the right, possessed by every citizen, to require that the government be administered according to law and that public moneys not be wasted" does not alone entitle a private citizen to institute an action in the federal courts); *Allen v. Wright*, 468 U.S. 737, 751 (1984) (noting the general prohibition on a litigant's raising another person's legal rights and the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches of government); *Mass v. Mellon*, 262 U.S. 447, 488 (1923) (noting that "standing cannot be predicated upon an injury the plaintiff suffers in some indefinite way in common with people generally"); *Tyler v. Judges of Court of Registration*, 179 U.S. 405, 406 (1900) ( "Even in a proceeding which he prosecutes for the benefit of the public, the plaintiff must generally aver an injury peculiar to himself, as distinguished from the great body of his fellow citizens."); *Fialka-Feldman v. Oakland Univ. Bd. Of Trustees*, 639 F.3d 711, 715 (6th Cir. 2011) (observing that matters of public interest are the arena in which the federal court must be most vigilant about the "case or controversy" requirement) (citing Felix Frankfurter, A Note on Advisory Opinions, 37 HARV. L. REV. 1002, 1007 (1924) (describing advisory opinions as "ghosts that slay")); *Hooker v. Fed. Election Comm'n*, 21 F. App'x 402, 406 (6th Cir. 2001) (finding general claims regarding the election process to be an apt example of the type of general, non-concrete allegations that the Supreme Court adverted to in *Warth*); *Hooker v. Fed. Election Comm'n*, 92 F. Supp. 2d 740, 742-43 (M.D. Tenn. 2000) (citing *Warth* and noting that limitations on the litigation of generalized grievances are necessary because otherwise "the courts would be called upon to decide abstract questions of wide public significance even though other governmental institutions may be more competent to address the questions and even though judicial intervention may be unnecessary to protect

individual rights"); *Hooker v. Sasser*, 893 F. Supp. 764, 767-68 (M.D. Tenn. 1995) (where alleged injuries were common to all state voters, finding that there was insufficient factual specificity to allow the court to make a decision and redress those injuries and that doing so would constitute interference with the legislative branch of government).

Applying these principles, the court finds that Johnston's alleged injuries fail to meet the constitutional and prudential requirements necessary to establish standing. Johnston does not allege any action taken against him. Neither the interposition bill considered by the Tennessee legislature nor the Fiscal Note make any reference to Johnston. As such, Johnston is not himself a particular victim of the actions of which he complains. Rather, the alleged violations are generalized grievances concerning governmental actions purportedly taken to the detriment of the Tennessee citizenry. Indeed, there is no allegation sufficient to establish that the primary relief sought by Johnston – forcing Geise to correct the Fiscal Note – would address an injury to Johnston, as opposed to one of the general public.

Moreover, the Complaint as a whole fundamentally concerns the general legislative process in Tennessee. Johnston's core allegation – repeated many times throughout the Complaint and the Objections – is that Geise violated due process by certifying a fraudulent Fiscal Note that caused the failure of Johnston's interposition bill (the passage of which would have purportedly been a benefit to the citizens of Tennessee). This is a general complaint of disappointment about the legislative process in Tennessee that encompasses the operation of the FRC, the process for the issuance of fiscal notes, and the role the Fiscal Note played in the consideration of certain proposed legislation by Tennessee legislators. In sum, Johnston seeks to force Geise to administer the laws in a particular manner in the hope of enabling the Tennessee

legislature to pass bills in a particular manner. While attempting to remedy general grievances involving the consideration of citizen-authored bills in this way may be admirable, it does not confer standing for purposes of subject-matter jurisdiction. To the contrary, Johnston's complaints raise precisely the type of public interest issues (whether meritorious or not) that are best resolved by the Tennessee legislature, or by Tennessee voters, as opposed to becoming the subject of an advisory opinion from a federal court.

Furthermore, the fact that Johnston may have invested personal resources into working for passage of the interposition bill does not transform a fundamentally generalized grievance into a personal one. Because passage of a bill is subject to the whims of the political process, that alone is not a protected interest that can be the subject of an injury-in-fact. Indeed, Johnston has no particular right to passage of the interposition bill, just as other citizens have no particular right to the passage of other legislation. The failure of a piece of legislation does not, by itself, cause an injury that confers standing on supporters of that legislation.

The court also notes that, even if Johnston's lost investments of time and energy were somehow to constitute an injury-in-fact, Johnston could not overcome a lack of redressability. Redressability is lacking where it depends on "the unfettered choices made by independent actors not before the courts and whose exercise of broad and legitimate discretion the courts cannot presume either to control or to predict." *Lujan*, 504 U.S. at 562. Here, the interposition bill authored by Johnston had been introduced by legislators under their own names. The bill was under consideration by legislators in the CLC. Even if the court were to order Geise to correct the Fiscal Note, the future of the interposition bill would be in the hands of independent legislators not before this court – individuals whose actions the court cannot control or predict.

15

There is no guarantee that the interposition bill would pass out of committee, pass one or both houses of the Tennessee legislature, or be signed into law by the Tennessee governor. But whatever the eventual outcome, the future of the bill would "hinge on the response . . . of others."[10] *Id.*

The court agrees with the Magistrate Judge that only two alleged injuries-in-fact require additional discussion. Specifically, Johnston alleges that Geise's certification of the "fraudulent" Fiscal Note caused Johnston to suffer (1) injury to his reputation and (2) loss of donations or other financial support (*e.g.*, book sales). (See Docket No. 1, pp. 11-12.) Setting aside the fact that these allegations are of the most vague nature, and assuming them to be true for purposes of the Motion to Dismiss, these allegations do not meet the causation requirement of standing. Johnston does not sufficiently allege how the issuance of a purportedly fraudulent Fiscal Note by *Geise* to the members of the CLC has had a negative impact on *Johnston's* reputation as a constitutional expert. Likewise, Johnston does not sufficiently allege how (or why) the fraudulent Fiscal Note caused *Johnston* (as opposed to, *e.g.*, Tennessee legislators who voted on the interposition bill) to receive less financial support. Indeed, Johnston describes himself as a successful constitutionalist and historian who continues to engage in attempts to pass interposition bills in twenty-eight states and who has sold books and made media appearances based on his overall body of work, as opposed to any actions specific to Tennessee. Put simply, Johnston offers insufficient factual allegations as to how Geise's actions caused him any personal loss of reputation or financial support. Furthermore, even if the court were to find that Johnston

---

[10] The fact that Johnston has statements of support from particular legislators does not speak to the ultimate future performance of the bill where many *other* legislators are involved.

has properly alleged injury-in-fact and causation as to reputational harm and loss of financial support, Johnston fails to sufficiently allege how his claims concerning the allegedly fraudulent nature of the Fiscal Note would redress those losses; the evaluation of Johnston's reputation and decisions as to whether to financially support him would be made by third parties over whom the court has no control.

After a *de novo* review of the issues, the court finds that the Objections offer no basis in fact or law to disturb the Magistrate Judge's R&R.[11] In sum, the Complaint fails to meet the requirements for standing. Most of Johnston's alleged injuries are merely generalized grievances resulting from an unsuccessful foray into the Tennessee legislative process, and as such there exists insufficient injury-in-fact under the Constitution and prudential principles. The Complaint also cannot overcome a fatal lack of causation and redressability concerning Johnston's alleged injuries of diminished reputation and loss of financial support. Accordingly, the Complaint must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction.[12] The court, therefore, will terminate the Motions for Temporary Restraining Order as moot. Finally, having dismissed all of the federal claims against Geise, the court will decline to exercise jurisdiction over Johnston's remaining state law claims.

## **CONCLUSION**

---

[11] The court has considered the affidavits offered by Johnston and weighed them along with the exhibits attached to the Complaint and the Fiscal Note. While several affidavits from Tennessee legislators are generally favorable to Johnston, they are at most individual opinions about Johnston's efforts, the interposition bill, and the Fiscal Note, none of which sufficiently establish injury-in-fact or ensure redressability for the purposes of Johnston's standing to pursue this action.

[12] Although John Doe defendants are named in the caption of this matter, they have never been discussed, and Johnston does not raise any issue regarding them in the Objections. Accordingly, they do not pose an obstacle to dismissal.

For these reasons, the court finds as follows:

1. Plaintiff Louie E. Johnston, Jr.'s Objections (Docket No. 40) are **OVERRULED**.

2. The Magistrate Judge's Report and Recommendation (Docket No. 39) is **ACCEPTED AND ADOPTED.**

3. Defendant Lucien D. Geise's Motion to Dismiss (Docket No. 20) is **GRANTED**.

4. This matter is **DISMISSED** as follows**:**
   a. All federal claims are dismissed **WITH PREJUDICE**; and
   b. All remaining state law claims are dismissed **WITHOUT PREJUDICE**.

5. Plaintiff Louie E. Johnston's Motions for Temporary Restraining Order (Docket Nos. 2, 31) are **TERMINATED** as moot.

6. This Order shall constitute the final judgment in this case. The Clerk of Court shall close the case for all purposes.

It is so **ORDERED**.

Enter this 18th day of February 2015.

_____
ALETA A. TRAUGER
United States District Judge